# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KEVIN JACKSON, | Civ. No. 22-1630 (RMB) (AMD) |
| *Plaintiff,* | **OPINION** |
| v. |  |
| PHILIP D. MURPHY, *et al.*, |  |
| *Defendants.* |  |

**BUMB,** Chief District Judge.

   **THIS MATTER** comes before the Court upon the Motion for Summary Judgment filed by Defendant Sergeant Jay Cisrow ("Sgt. Cisrow" or "Defendant"). (ECF No. 80.) The sole remaining claim is a First Amendment retaliation claim brought by *pro se* Plaintiff Kevin Jackson ("Plaintiff"), a state prisoner currently incarcerated at Bayside State Prison. Plaintiff alleges that Sgt. Cisrow retaliated against him for filing an administrative grievance by destroying his personal copy of the *New Jersey Lawyer's Manual*. Because the record fails to establish any element of a First Amendment retaliation claim against Sgt. Cisrow, the Court will **GRANT** the motion and **DISMISS** the Amended Complaint with prejudice as to Sgt. Cisrow.[1]

---

[1]Because Plaintiff proceeds *pro se*, the Court construes his submissions liberally and holds them to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (*per curiam*). That obligation does not relieve Plaintiff of his burden at summary judgment to point to concrete evidence showing a genuine issue for trial. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Plaintiff did not oppose the motion with a responsive statement of

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

Plaintiff Kevin Jackson has been continuously incarcerated in the New Jersey Department of Corrections for approximately forty years. (ECF No. 80-6 ("Jackson Dep.") at T9:12–14.) He commenced this action on March 22, 2022, filing a Complaint and an order to show cause seeking a temporary restraining order enjoining Defendants from "illegally censor[ing]" legal textbooks and related materials. (ECF No. 1.) On March 24, 2022, the Court denied the temporary restraining order, granted Plaintiff's application to proceed *in forma pauperis*, and dismissed Governor Philip D. Murphy *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1). (ECF No. 3.) The Court permitted three claims to proceed under 42 U.S.C. § 1983: (1) First Amendment retaliation; (2) denial of access to the courts; and (3) First Amendment freedom of speech. (*Id.*)

Defendants Powell, Gramp, and Hicks moved to dismiss on November 23, 2022. (ECF No. 35.) The Court granted that motion on June 21, 2023, dismissing all claims with prejudice as to Gramp and dismissing Powell and Hicks without prejudice. (ECF Nos. 42, 43.) The remaining defendants—Victoria Kuhn, Keisha Fisher, and

---

material facts as required by L. Civ. R. 56.1(a), and his opposition brief was filed after the extended deadline the Court had set. By Order dated March 13, 2026, the Court granted Plaintiff leave to file as within time (ECF No. 86.) The Court has conducted an independent review of the full record in evaluating this motion. *See Ross-Tiggett v. Reed Smith LLP*, 2024 WL 1928176, at *3 (D.N.J. Apr. 30, 2024) (citing Fed. R. Civ. P. 56(c)(3)).

Jay Cisrow—moved to dismiss in their entirety on October 30, 2023. (ECF No. 53.) On May 8, 2024, the Court granted that motion in part. (ECF Nos. 57, 58.) As to all three defendants the Court: dismissed with prejudice the access-to-courts claim; dismissed without prejudice the retaliation and freedom of speech claims as to Kuhn and Fisher; and dismissed without prejudice the freedom of speech claim as to Cisrow. Thus, Plaintiff's First Amendment retaliation claim against Sgt. Cisrow was the sole surviving claim. (ECF No. 58.) Plaintiff was granted leave to file an amended complaint within thirty days. (*Id.*) Sgt. Cisrow filed her Answer on May 22, 2024. (ECF No. 59.)

On August 20, 2024, Plaintiff filed an Amended Complaint against Sgt. Cisrow. (ECF No. 65.) Sgt. Cisrow answered on September 3, 2024. (ECF No. 67.) Following several extensions of the scheduling order (ECF Nos. 71, 74, 77), fact discovery closed on August 29, 2025. Plaintiff's deposition was taken on August 12, 2025, pursuant to a court order. (ECF Nos. 79, 80-6.) Sgt. Cisrow filed the instant Motion for Summary Judgment on September 30, 2025, with a supporting brief, Statement of Material Facts, and exhibits. (ECF No. 80.) The Court granted Plaintiff an extension of time to respond, with a deadline of February 7, 2026. (ECF No. 82.) Plaintiff filed his opposition on February 13, 2026. (ECF No. 83-5.) He simultaneously moved for leave to file as within time, explaining that he had been transported to another facility for a medical procedure and was without access to his legal materials for twelve days upon his return. (ECF No. 83.) The Court granted that motion by Order dated March 13, 2026. (ECF No. 86.) Sgt. Cisrow filed a reply brief on April 13, 2026. (ECF No. 87.)

### B. Factual Background

The underlying facts are drawn from Defendant's Statement of Material Facts and Plaintiff's deposition transcript.[2]

Throughout his incarceration, Plaintiff regularly ordered legal reference books from authorized publishers, including the *New Jersey Lawyer's Manual*, which he estimates he received approximately ten times without incident over a period of four decades. (Jackson Dep. T22:20–25; T23:1–5.) At all times relevant to this action, Plaintiff was incarcerated at South Woods State Prison, and Defendant Jay Cisrow served as the Sergeant supervising the South Woods mailroom. (SOMF ¶1.) When Plaintiff's most recent order of the *New Jersey Lawyer's Manual* arrived at the facility, it was confiscated by the mailroom. (SOMF ¶1.) Plaintiff contends the book was not on any banned-publications list and that the confiscation was unlawful. (Jackson Dep. T21:13–16.) He appealed within the prison. (SOMF ¶2.)

While the appeal was pending, Plaintiff received a notification from Sgt. Cisrow via JPay—the prison's electronic messaging system—informing him that the book had been destroyed. (SOMF ¶¶5–6; Jackson Dep. T12:20–25.) Sgt. Cisrow's message stated only that the book had been destroyed; she did not represent that she personally

---

[2]Plaintiff did not file a responsive statement of material facts as required by Local Civil Rule 56.1, which provides that each statement of material fact must be specifically addressed by the opposing party, and that facts not so addressed "shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a). Accordingly, all eight paragraphs of Defendant's Statement of Material Facts (ECF No. 80-4) are deemed admitted. *See Van Orden v. Borough of Woodstown*, 181 F. Supp. 3d 237, 239 n.2 (D.N.J. 2015); *see also Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).

destroyed it. (SOMF ¶6; Jackson Dep. T13:10–15 ("No, she didn't say specifically she destroyed [it], she said it was destroyed.")) Plaintiff did not witness the destruction. (SOMF ¶4; Jackson Dep. T12:7–12.) When asked at his deposition how he knew Sgt. Cisrow was responsible, he testified: "She's in charge of the mailroom." (Jackson Dep. T12:9.) He acknowledged that no one told him she personally destroyed the book, and that he drew that conclusion solely from her supervisory role. (SOMF ¶¶6–7; Jackson Dep. T13:10–15.)

Plaintiff pursued the prison grievance process following the destruction of his book. The administration affirmed the decision at each level, which Plaintiff described at his deposition as a "rubber stamp." (Jackson Dep. T20:4–7.) No administrative response identified Sgt. Cisrow as the individual who personally destroyed the book.

Although Plaintiff's personal copy of the *New Jersey Lawyer's Manual* was destroyed, the same title was available to him through the South Woods prison law library. (SOMF ¶8.) Plaintiff confirmed that he could access the book there by signing up to attend on a scheduled pass. (Jackson Dep. T15:4–19.) He also retained older editions of the same reference materials from 2018 and 2019 in his cell. (Jackson Dep. T25:7–16 ("To this day I still have these same old books."))

## II.    LEGAL STANDARD

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is

5

"genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.* at 250.

When deciding whether a genuine issue of material fact exists, the Court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, "the mere existence of a scintilla of evidence," without more, will not give rise to a genuine issue for trial. *Anderson*, 477 U.S. at 252. Summary judgment remains appropriate "[w]here the record … could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a "fair-minded" jury could "reasonably" decide.'" *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once that burden is met, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The nonmovant's burden is not a light one: it "must point to concrete evidence in the record", for mere allegations, conclusions, conjecture, and speculation

6

will not defeat summary judgment. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

## III.   DISCUSSION

To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a prisoner-plaintiff must show: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of the defendant; and (3) his protected conduct was a substantial or motivating factor in the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). An "adverse action" is one "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Id.* at 422 n.6 (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). Causal connection may be shown through "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." *Id.* at 424 (citations omitted).[3]

Plaintiff's claim fails on each element. The Court addresses them in turn.

### A. Protected Conduct

The first element requires that the plaintiff have engaged in constitutionally protected conduct. *Rauser*, 241 F.3d at 333. Plaintiff cannot satisfy this element for two

---

[3]Courts approach "First Amendment retaliation claims brought by inmates … 'with skepticism and particular care' because such claims are easy to allege and difficult to prove." *Mack v. Yost*, 968 F.3d 311, 324 (3d Cir. 2020) (quoting *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018)).

independent reasons. The first goes to the timeline; the second to the structural circularity of his theory.[4]

First, the record does not establish the chronological relationship between Plaintiff's grievance and the destruction of his book. Plaintiff knew only what Sgt. Cisrow's JPay message conveyed—that the book had been destroyed. (SOMF ¶¶5–6.) He could not identify the date or even the month of the destruction. (Jackson Dep. T14:16–21.) If the book was destroyed before Plaintiff filed his grievance, the destruction could not have been retaliation for a protected activity that had not yet occurred. It is Plaintiff's burden to establish this chronology, and he has not done so. That failure is independently fatal to his claim. As discussed further in Section III.D, it also forecloses temporal proximity: without a cognizable sequence of events showing the grievance preceded the alleged adverse action, there is no basis for inferring a causal connection.

Second, even assuming the book was destroyed after the grievance was filed, Plaintiff still cannot identify constitutionally protected conduct that preceded and was meaningfully distinct from the alleged adverse action. Plaintiff's grievance protested the confiscation of the book. The alleged retaliation is the permanent resolution of that

---

[4]The filing of a prison grievance is, as a general matter, constitutionally protected activity under the First Amendment. *Mack v. Warden Loretto, FCI*, 839 F.3d 286, 298 (3d Cir. 2016). The Court accepts for purposes of this motion that Plaintiff's filing of a grievance challenging the confiscation of his book constituted protected conduct. The claim fails, however, because the alleged adverse action—the destruction of the book—is not meaningfully distinguishable from the underlying deprivation that prompted the grievance, as explained below.

same confiscation through destruction. The *status quo ante*—the state of affairs as it existed when the grievance was filed—was one in which Plaintiff had already been denied possession of the book. After the alleged retaliation, his circumstances were identical. The destruction altered nothing in practice; it merely rendered permanent what the original confiscation had already accomplished. A plaintiff cannot bootstrap a retaliation claim by pointing to a grievance about an initial deprivation and then characterize the continuation of that same deprivation as retaliation for the grievance. *See generally Watson*, 834 F.3d at 422–24.

The practical consequences of accepting Plaintiff's theory illustrate why it must be rejected. Any time a prisoner grieves a deprivation and prison officials thereafter uphold or make permanent that deprivation, the prisoner could allege First Amendment retaliation. Every unfavorable administrative outcome following a grievance would potentially ripen into a constitutional tort. Absent unique facts—not present here—the First Amendment retaliation doctrine does not countenance that result, and this Court declines to endorse it.

### B. Adverse Action — Personal Involvement

Plaintiff's claim fails independently on the second element as well. Because vicarious liability is inapplicable to § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Personal involvement requires "allegations of personal direction or of actual knowledge and acquiescence," and may not rest "solely on the operation of *respondeat superior*." *Rode*

*v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). The record here establishes none of that.[5]

It is undisputed that: Plaintiff did not witness the destruction of his book (SOMF ¶4); no one told him Sgt. Cisrow personally destroyed it (SOMF ¶6); Sgt. Cisrow's JPay message stated only that the book *had been* destroyed, without identifying who destroyed it (SOMF ¶6); and Plaintiff attributed responsibility to Sgt. Cisrow solely because she supervised the mailroom (SOMF ¶7; Jackson Dep. T12:7–19). That last point bears emphasis: Plaintiff's entire theory of liability against Sgt. Cisrow rests on the inference that because she was the mailroom supervisor, she must have been responsible for whatever happened in the mailroom. That is *respondeat superior* by another name, and it is precisely what § 1983 disallows. *See Iqbal*, 556 U.S. at 676; *Rode*, 845 F.2d at 1207; *Evancho v. Fisher*, 423 F.3d 347, 353–54 (3d Cir. 2005) (rejecting attempt to infer personal involvement from supervisory status alone).[6]

---

[5]The Third Circuit recognizes two routes to supervisory liability under § 1983. A supervisor may be personally liable "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (internal quotation omitted). Alternatively, a supervisory policymaker may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* Neither track is satisfied here. There is no evidence that Sgt. Cisrow participated in, directed, or had knowledge of and acquiesced in the destruction (first track), and no allegation or evidence that she established a policy or custom that directly caused constitutional harm (second track). Supervisory status alone, absent such evidence, is insufficient to establish § 1983 liability. *Parkell v. Danberg*, 833 F.3d 313, 331 (3d Cir. 2016).

[6]Speculation and conjecture may not defeat a motion for summary judgment. *Acumed LLC v. Advanced Surgical Servs.*, 561 F.3d 199, 228 (3d Cir. 2009). The nonmovant

The one affirmative act by Sgt. Cisrow that appears anywhere in the record is that she communicated to Plaintiff, through the JPay system, that his book had been destroyed. Serving as the messenger of an administrative decision does not make one its author. Participation in the administrative or grievance process—or mere notification of an outcome—does not establish the personal involvement required by § 1983. *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (participation in grievance process insufficient to establish personal involvement in underlying constitutional violation); *Schreane v. Marr*, 722 F. App'x 160, 166–67 (3d Cir. 2018) (*post hoc* awareness through grievances insufficient to establish personal involvement).

In *Jones v. Employees of DOC*, No. 22-1190, 2024 WL 1258635, at *12-13 (E.D. Pa. Mar. 25, 2024), the Eastern District of Pennsylvania dismissed claims against a DOC mailroom supervisor because the plaintiff "does not allege any facts at all regarding how [she] was involved with the disappearance" of the property at issue and the complaint "fails to identify … any actions she took, or any communications she made." That reasoning is persuasive and applies with equal force here. Plaintiff's claim against Sgt. Cisrow rests entirely on her job title, which is not enough under § 1983.

---

"must point to concrete evidence in the record"; "mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995). Jackson's inference that Sgt. Cisrow must have destroyed the book because she supervised the mailroom is precisely the kind of speculation that cannot create a genuine issue of material fact. *See Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions" (internal quotation omitted)).

This case bears no resemblance to the narrow circumstances in which supervisory liability in the prison mail context has been found. In *Diaz v. Palakovich*, 448 F. App'x 211, 215 (3d Cir. 2011), the Third Circuit permitted a supervisory claim to proceed where the record contained evidence of a pattern of ongoing mail interference, contemporaneous notice to the supervisor, and a failure to intervene. None of those elements are present here. Plaintiff identifies no recurring pattern of misconduct, no notice to Sgt. Cisrow before or during the destruction of the book, and no evidence that she knowingly acquiesced in any continuing unconstitutional conduct. The Court, therefore, does not apply an unduly narrow view of supervisory liability; rather, the record simply does not contain the evidence necessary to sustain such a claim.

### C. Adverse Action — Ordinary Firmness

Plaintiff's claim fails on the second element for a third, independent reason. Even crediting for purposes of argument that Sgt. Cisrow personally destroyed the book, the loss of one personal copy of a title that remained available in the prison law library—and in older editions already in Plaintiff's possession—did not constitute an adverse action cognizable under the First Amendment.

An adverse action must be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Allah*, 229 F.3d at 225. This is an objective standard: the question is not whether this Plaintiff was subjectively chilled, but whether an objectively reasonable person of ordinary firmness would have been deterred. *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). The deterrence must

12

"be more than *de minimis* or trivial." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003).

The Third Circuit has held the denial of personal possession of a legal reference book does not satisfy the ordinary firmness standard where the material remains accessible through alternative institutional means. *Barna v. Boyce*, 563 F. App'x 103, 105 (3d Cir. 2014). The undisputed record shows that the *New Jersey Lawyer's Manual* was available in the South Woods law library, which Plaintiff could access by scheduling a pass. (SOMF ¶8; Jackson Dep. T15:4–19.) Plaintiff also retained older editions of the same work in his cell throughout this litigation. (Jackson Dep. T25:7–16.) The deprivation at issue was the loss of the convenience of having a current personal copy at hand—not the loss of access to the underlying legal resource. That distinction is critical: an inconvenience is not a deterrent. A person of ordinary firmness would not be deterred from exercising First Amendment rights by the loss of a personal copy of a book he could access in the library and in prior editions in his own cell.

Plaintiff's argument that the destruction of the book while his administrative appeal was pending makes the deprivation more culpable is not an argument that alters this analysis. The relevant question for purposes of the adverse action element is not whether prison officials acted improperly in their administration of the appeal process—a question that may bear on the N.J.A.C. arguments addressed in Section III.E—but whether the loss of the book was sufficiently serious to deter a person of ordinary firmness from filing grievances in the first instance. Because Plaintiff had no

13

less access to the underlying legal resource after the destruction than he had before it, the answer to that question is no.

### D. Causation

Plaintiff's claim fails on causation as well. He must show that his protected grievance-filing was a substantial or motivating factor in the alleged adverse action, which may be demonstrated through either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." *Watson*, 834 F.3d at 424 (citations omitted). He can establish neither. And because Plaintiff cannot establish the threshold elements of his retaliation claim, the Court need not reach whether Defendant would have made the same decision absent any protected conduct for legitimate penological reasons. *Rauser*, 241 F.3d at 334.

As to temporal proximity: for the reasons discussed in Section III.A, the record contains no timeline establishing that the destruction followed the filing of the grievance. Plaintiff cannot identify the date or month of the destruction. (Jackson Dep. T14:16–21.) Without a cognizable sequence of events showing that protected activity preceded the alleged adverse action, temporal proximity—which by definition requires closeness in time—cannot be established. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).

As to pattern of antagonism: the record is equally bare. Plaintiff identified no prior adverse treatment by Sgt. Cisrow, no statements suggesting hostility toward his litigation activity, and no course of conduct reflecting animus toward the exercise of

14

his First Amendment rights. Beyond the events giving rise to this action, his interactions with Sgt. Cisrow were limited to occasional sightings in the visiting hall during which the matter was never discussed. (Jackson Dep. T19:5–15.) No pattern of antagonism exists in this record.

There is also no evidence that Sgt. Cisrow was aware that Plaintiff had filed a grievance at the time the book was destroyed. This is independently fatal to causation. A defendant cannot retaliate against a plaintiff for protected activity she did not know had occurred. *See Thaddeus-X*, 175 F.3d at 399 (defendant must have been "motivated in substantial part" by the protected activity, which presupposes awareness of it); *Mack v. Yost*, 968 F.3d at 324 (plaintiff must show the protected conduct was a substantial or motivating factor in the defendant's decision). The record is entirely silent on whether Sgt. Cisrow had any knowledge of Plaintiff's grievance. Plaintiff does not allege she knew, and none of the documentary evidence—not the JPay message, not the administrative responses, not the deposition testimony—reflects any awareness on her part. *See Alexander v. Fritch*, 396 F. App'x 867, 874 (3d Cir. 2010) ("[T]he fact that a decision was adverse to a prisoner is not, without more, evidence of retaliation."). Plaintiff has adduced no evidence—direct or circumstantial—from which a reasonable jury could infer that the destruction of his book was causally connected to his filing of a grievance.

### E. Plaintiff's Remaining Arguments

In lieu of engaging with the governing retaliation framework, Plaintiff's opposition makes two principal arguments: first, that Sgt. Cisrow violated N.J.A.C.

10A mailroom procedures by destroying his book while his administrative appeal was pending, without providing written notice, completing the required shift-commander review, or adhering to the procedures in N.J.A.C. 10A:18-4.11 and 10A:18-4.13 (ECF No. 83-5 at 7–13); and second, that the timing of the destruction—occurring while his administrative appeal was pending—itself evidences retaliatory motive. The Court addresses each.

The Court does not dismiss lightly the possibility that proper procedures were not followed. But evidence of an administrative irregularity, standing alone, does not establish any element of a First Amendment retaliation claim. Plaintiff must adduce evidence that he engaged in protected conduct, that Sgt. Cisrow personally took adverse action against him, and that the two were causally connected. Procedural non-compliance with N.J.A.C. 10A is not a substitute for proof on those elements.[7]

Plaintiff's timing argument fares no better. He contends that because the book was destroyed while his appeal of the confiscation was pending—rather than after a final administrative decision—the destruction reflects animus toward his grievance-filing activity. But this argument conflates two distinct concepts. The pending-appeal timing bears on whether prison officials complied with their *own* administrative

---

[7]Due process liberty interests created by state regulations are "generally limited to freedom from restraint" that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The N.J.A.C. 10A provisions Plaintiff invokes govern mailroom handling procedures; they do not create a cognizable liberty interest. Procedural irregularities in the handling of confiscated property do not give rise to an independent § 1983 claim where, as here, adequate post-deprivation remedies are available through the prison grievance process. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

procedures. It does not establish that the destruction was motivated by Plaintiff's exercise of First Amendment rights. Even if the destruction was premature under N.J.A.C. 10A, a procedural misstep is not evidence of retaliatory intent. More fundamentally, Plaintiff has not adduced any evidence that whoever destroyed the book did so because Plaintiff had filed a grievance, as opposed to as an ordinary (if potentially improper) administrative disposition of confiscated property. Absent that causal evidence, the timing of the destruction—whether before or after the appeal was resolved—does not carry the weight Plaintiff places on it.

Plaintiff's other legal authorities are similarly unavailing.[8] Each addresses a different constitutional framework—exhaustion, jurisdictional stripping, due process in disciplinary proceedings, the reasonableness of prison regulations, or access to the courts—none of which bears on the elements of a First Amendment retaliation claim. Liberally construed, the opposition does not create a genuine dispute of material fact on any element of Plaintiff's claim.

---

[8]Plaintiff cites *Jones v. Bock*, 549 U.S. 199 (2007) (exhaustion is an affirmative defense, not a pleading requirement); *Haywood v. Drown*, 556 U.S. 729 (2009) (state statute divesting jurisdiction over § 1983 claims against corrections officers violated Supremacy Clause); *Wolff v. McDonnell*, 418 U.S. 539 (1974) (due process protections in prison disciplinary proceedings); *Turner v. Safley*, 482 U.S. 78 (1987) (prison regulations infringing constitutional rights must be reasonably related to legitimate penological interests); and *Ex parte Hull*, 312 U.S. 546 (1941) (states may not abridge prisoners' right of access to the courts). None governs the First Amendment retaliation analysis. *Jones v. Bock* addresses exhaustion, which is not at issue. *Haywood* concerns jurisdictional stripping, which is irrelevant in federal court. *Wolff* and *Turner* address due process and the reasonableness of prison regulations—neither of which is implicated by the elements of a retaliation claim. *Ex parte Hull* and the access-to-courts doctrine governed the claim dismissed with prejudice earlier in this litigation.

## IV.   CONCLUSION

For the reasons set forth above, Defendant Sgt. Cisrow's Motion for Summary Judgment (ECF No. 80) is **GRANTED**. Plaintiff's First Amendment retaliation claim is **DISMISSED WITH PREJUDICE** as to Defendant Jay Cisrow. The Doe defendants named in the Amended Complaint have never been identified or served and are accordingly dismissed without prejudice.[9] An appropriate Order accompanies this Opinion.

Dated: **May 28, 2026**

> *s/ Renée Marie Bumb*
> Renée Marie Bumb
> Chief United States District Judge

---

[9]The Amended Complaint names Jane Doe and John Doe as defendants "[t]o be named at a later date." (ECF No. 65.) Neither Doe defendant has been identified or served, and no claims have been prosecuted against them. They are accordingly dismissed without prejudice. *See* Fed. R. Civ. P. 4(m); *Blakeslee v. Clinton County*, 336 F. App'x 248, 250 (3d Cir. 2009) (affirming dismissal of unnamed "John Doe" defendants who were never identified or served).

18